# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE,
Plaintiff and Respondent,

v.

CODY WADE HENSON,
Defendant and Appellant.

S252702

Fifth Appellate District
F075101

Fresno County Superior Court
F16901499, F16903119

---

August 1, 2022

Justice Jenkins authored the opinion of the Court, in which Chief Justice Cantil-Sakauye, Justice Corrigan, and Justice Guerrero concurred.

Justice Kruger filed a dissenting opinion, in which Justice Liu and Justice Groban concurred.

---

PEOPLE v. HENSON

S252702

Opinion of the Court by Jenkins, J.

Penal Code[1] section 954 provides in relevant part: "[1] An accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense[,] or two or more different offenses of the same class of crimes or offenses, under separate counts, and [2] if two or more accusatory pleadings are filed in such cases in the same court, the court may order them to be consolidated." As is evident from our insertion of numerals into the text, the quoted portion of section 954 includes two main clauses joined by the conjunction "and." (See *People v. Merriman* (2014) 60 Cal.4th 1, 36 [recognizing these distinct clauses in § 954].) The first clause addresses joinder of related offenses in a single pleading, and for convenience, we will refer to it as the "joinder clause." The second clause addresses court consolidation of separate pleadings, which we will refer to as the "consolidation clause."

In this case, the question before us is whether and under what circumstances a trial court can consider more than one preliminary hearing record in ruling on a motion under section 995 to set aside the information for lack of probable cause to support the commitment order. (See § 995, subd. (a)(2).) But in order to resolve that question, the parties and the Court of Appeal offer three different interpretations of section 954. The

---

[1] All further undesignated statutory references are to the Penal Code.

1

People argue that section 954's *joinder* clause authorizes a district attorney to file a single information combining related offenses that were the subject of separate preliminary examinations. By contrast, the Court of Appeal majority concluded that section 954's *consolidation* clause provides the district attorney with that authority. Third, defendant argues that a single information combining related offenses that were the subject of separate preliminary examinations is unauthorized absent a court-issued consolidation order — and no such order was obtained in this case.

We conclude that section 954's joinder clause permits a district attorney to file a single information in the circumstances presented here, provided, as is true here, that the applicable time constraints are satisfied. We further conclude that when, as here, related offenses are properly joined by the district attorney, a trial court is permitted to consider more than one preliminary hearing record in ruling on a section 995 motion. Accordingly, we affirm the judgment of the Court of Appeal, which reversed the trial court's order of dismissal, although we do not employ the Court of Appeal's reasoning.

## I. FACTS AND PROCEDURAL BACKGROUND

The facts are not the subject of significant dispute, and we take them largely from the Court of Appeal opinion.

### A. The Complaints, the Commitment Orders, and the Information

On March 7, 2016, a felony complaint was filed at the Fresno County Superior Court and assigned case number

F16901499 (magistrate case 1499).[2] The complaint charged defendant with: (1) unlawfully driving or taking a vehicle after having suffered three prior vehicle theft convictions (Veh. Code, § 10851, subd. (a); § 666.5); (2) receiving stolen property (a motor vehicle) after having suffered three prior vehicle theft convictions (§§ 496d, subd. (a), 666.5); (3) resisting, obstructing, or delaying a peace officer or an emergency medical technician (§ 148, subd. (a)(1)); and (4) possession of burglary tools (§ 466). The offenses were all alleged to have occurred on March 4, 2016, and defendant was further alleged to have served two prior prison terms (§ 667.5, subd. (b)). Defendant was arraigned on the complaint on March 8, 2016, and he was released on bail.

On May 19, 2016, a different felony complaint was filed at the Fresno County Superior Court, and it was assigned case number F16903119 (magistrate case 3119). The complaint charged defendant with: (1) two counts of unlawfully driving or taking a vehicle after having suffered three prior vehicle theft convictions (Veh. Code, § 10851, subd. (a); Pen. Code, § 666.5), (2) two counts of receiving stolen property (a motor vehicle) after having suffered three prior vehicle theft convictions (§§ 496d, subd. (a), 666.5); and (3) resisting, obstructing, or delaying a peace officer or an emergency medical technician (§ 148, subd. (a)(1)). The offenses were all alleged to have occurred on May

---

[2] Although the complaint was filed *at* the superior court, it was technically filed "with the magistrate," not with the superior court itself. (§ 806.) Subject to limited exceptions, the first pleading that invokes the superior court's jurisdiction in a felony case is the information or the indictment. (§§ 682, 737, 739, 860, 944.) The distinction between magistrate proceedings and trial court proceedings is significant here. Therefore, for the sake of clarity, we use the term "magistrate case" when discussing proceedings that occurred before a magistrate.

17, 2016, and defendant was further alleged to have served two prior prison terms (§ 667.5, subd. (b)) and to have committed the May 17 offenses while released on bail in magistrate case 1499 (§ 12022.1). Defendant was arraigned on the latter complaint on May 24, 2016.

The preliminary hearing in magistrate case 3119 took place on November 16, 2016. The magistrate held defendant to answer on all charges, and arraignment on an information was scheduled for December 1, 2016. The preliminary hearing in magistrate case 1499 took place six days later, on November 22, 2016. The magistrate again held defendant to answer on all charges, and arraignment on an information was again scheduled for December 1, 2016.

On November 29, 2016, within 15 days of both commitment orders (see §§ 739, 860 [imposing a 15-day time limit]), the People attempted to file a single combined information bearing both magistrate case numbers, with magistrate case 3119 designated as the lead case.[3] Counts 1 through 4 of the combined information tracked the charges upon which defendant was held to answer in magistrate case 1499, and counts 5 through 7 reflected the charges upon which defendant was held to answer in magistrate case 3119. The information was initially rejected by the clerk's office. On the

---

[3] As noted on page 3, footnote 2, *ante*, and as will be discussed in detail later in this opinion, magistrate proceedings and trial court proceedings are institutionally distinct proceedings. Therefore, there is no reason why an information needs to be given the same case number as the magistrate proceeding on which the information relies. Nonetheless, the practice in Fresno County seems to be to give the two proceedings the same case number.

face page of the information, a file stamp bearing the date "November 29, 2016" is crossed out by hand, and the cross-out is initialed, suggesting that someone in the clerk's office raised a question about the form of the pleading. The same information was then filed two days later, on December 1, 2016 (still within 15 days of both commitment orders), and the word "CONSOLIDATED" was written by hand above the word "INFORMATION."[4]

## B. Objection to Combined Information at the Arraignment

Defendant was scheduled to be arraigned on the joint information on the same day as its filing, but a complication arose regarding defendant's representation. The public defender's office had earlier declared a conflict in magistrate case 3119, but not in magistrate case 1499, and therefore "conflict counsel" had been appointed to represent defendant in magistrate case 3119. But the filing of an information initiates a new proceeding that is institutionally distinct from the magistrate proceeding, and therefore defense counsel is appointed anew at the arraignment on an information. (See *Lempert v. Superior Court* (2003) 112 Cal.App.4th 1161, 1170–1171; see also § 987.1.) Because the information filed in this case combined the charges from the two magistrate proceedings,

---

[4] The Court of Appeal dissent explains that "the clerk's office rejected the information and sent it to the court department where separate arraignments in both cases were scheduled, so that the matter of 'consolidation' could be 'addressed' by the court." (*Henson, supra*, 28 Cal.App.5th at p. 515, dis. opn. of Smith, J., fn. omitted.) The dissent further states that the judicial assistant in the arraignment department accepted the information for filing and wrote the word "CONSOLIDATED" on its face page. (See *ibid*.)

and because the public defender's office had declared a conflict in magistrate case 3119, the deputy public defender requested a continuance to make a conflict determination.

At the hearing a week later, on December 8, the deputy public defender stated that her office would need to "conflict off" the case if the two magistrate cases were combined into a single trial court case. Conflict counsel then asked whether the arraignment judge was willing to hear her oral objection to the information. Conflict counsel took the position that the charges from the two magistrate cases could not be combined into a single information without a consolidation order. In response, the arraignment judge expressed his view that the Penal Code permitted the People to file joint pleadings without leave of the court. After some discussion, the matter was continued for another week.

At the hearing on December 15, conflict counsel again argued that a consolidation order was required to combine charges from different magistrate cases. The arraignment judge then sought guidance from conflict counsel as to the proper vehicle to bring the issue before the court, noting that at an arraignment the law only permits a defendant to enter a demurrer or a plea.[5] The arraignment judge stated that he was "not unsympathetic" to conflict counsel's argument, but he did not know how the issue could be raised except by entering a plea and then filing a motion to sever (see § 954), or by demurrer on

---

[5]     Section 1002 provides: "The only pleading on the part of the defendant is either a demurrer or a plea." Section 1003 provides: "Both the demurrer and plea must be put in, in open Court, either at the time of the arraignment or at such other time as may be allowed to the defendant for that purpose."

6

the ground of improper joinder (see § 1004, para. (3)). In response, conflict counsel asked the court simply to reject the information as filed. But the court denied that request.

The public defender's office then declared a conflict, and conflict counsel was appointed to represent defendant as to all the charges in the information. Defendant was arraigned and pleaded not guilty. The judge set a trial date "[o]n case [*sic*] ending 119 and 499 that are filed together in one information."[6]

## C. Defendant's Section 995 Motion

Conflict counsel next filed a section 995 motion requesting that the court set aside the information at least in part. Section 995 requires the arraignment court, upon motion, to set aside an information if, among other things, "the defendant had been

---

[6] As noted, the judicial assistant in the arraignment department wrote the word "CONSOLIDATED" on the face page of the information. In addition, the clerk's minutes for magistrate case 1499 state: "Court orders case consolidated. All proceedings will be recorded in: F16903119." Similarly, the clerk's minutes for magistrate case 3119 state: "Court orders this case as lead case with case Fl6901499 consolidated into this case." Finally, docket entries were made indicating that the two cases had been consolidated. (See, e.g., *Henson, supra*, 28 Cal.App.5th at p. 515, dis. opn. of Smith, J.) The record, however, includes no formal order, either written or oral, consolidating the two cases. In the context of discussing judgments, we have said that the entry of minutes is "a clerical function" and "a discrepancy between the judgment as orally pronounced and as entered in the minutes is presumably the result of clerical error." (*People v. Mesa* (1975) 14 Cal.3d 466, 471; see *People v. Leon* (2020) 8 Cal.5th 831, 855; *People v. Farell* (2002) 28 Cal.4th 381, 384, fn. 2.) Here, where the clerk's minutes state that the trial court consolidated the cases, but no consolidation order appears in the record, we must likewise conclude that the clerk's minutes are in error.

committed without reasonable or probable cause." (§ 995, subd. (a)(2)(B); see *People v. Superior Court (Jurado)* (1992) 4 Cal.App.4th 1217, 1226.) Insisting that only the record of one of the preliminary examinations could be considered in resolving the section 995 motion, conflict counsel argued that defendant had been committed without probable cause regarding several counts of the combined information. Specifically, counsel argued there was no evidence presented at the preliminary examination in magistrate case 3119 to support counts 1 through 4 of the combined information, and, in the alternative, there was no evidence presented at the preliminary examination in magistrate case 1499 to support counts 5 through 7 of that information.

Defendant's section 995 motion was heard on January 13, 2017. At the outset of the hearing, the motions judge noted that he had before him two separate case files, one for magistrate case 1499 and the other for magistrate case 3119. He then asked the prosecutor whether there was any authority for the proposition the People could join the charges from two magistrate cases in a single information, in effect consolidating the cases (and their files) without the court's permission. The judge indicated that he did not believe the law permitted a court to treat the two preliminary hearing transcripts as if they were one, and he suggested that a section 995 motion could be used to raise the issue.

The prosecutor responded that the People did not seek to consolidate two separate accusatory pleadings. Rather, the People's first and only accusatory pleading in the superior court was the information, and in accordance with section 954's joinder clause, the People had properly joined "offenses of the same class" in that information. (See *People v. Landry* (2016) 2

8

Cal.5th 52, 76 [" 'Offenses of the same class are offenses which possess common characteristics or attributes.' "].) The prosecutor thus viewed the trial court proceeding as a completely new proceeding, distinct from the earlier magistrate proceedings. Hence, the filing of the information was, in the prosecutor's view, "the first inception of the proceeding," bringing section 954's joinder clause into play. As to the proper procedural vehicle by which defendant could challenge the propriety of the information, the prosecutor argued that the defense could have done so by way of demurrer, asserting an improper joinder under section 954 (see § 1004, para. (3)), but having failed to do so, the defendant could not raise a joinder issue by way of a section 995 motion.

The motions judge rejected the prosecutor's arguments. Emphasizing that two separate magistrate cases had been filed against defendant, the judge stated that the district attorney could not combine those cases without court approval. The judge then turned to the specific issue raised by defendant's section 995 motion, to wit, the question of probable cause to support defendant's commitment on the seven counts of the combined information. (See § 995, subd. (a)(2)(B).) Because the two magistrate cases had never been consolidated, the court considered only the evidence presented at the preliminary hearing in magistrate case 3119, which the People had designated as the lead case, and the court ignored the evidence presented at the preliminary hearing in magistrate case 1499. As a result, the court found no evidence to support the charges alleged in counts 1 through 4 of the combined information, and it dismissed those counts.

**D. Appeal**

The People appealed (see § 1238, subd. (a)(1); *People v. Alice* (2007) 41 Cal.4th 668, 680), and the Court of Appeal reversed in a split decision. (*People v. Henson* (2018) 28 Cal.App.5th 490 (*Henson*).)

*1. Court of Appeal's Majority Opinion*

Although the Court of Appeal reversed the trial court's order of dismissal, it did not adopt the reasoning relied on by the People in the trial court and on appeal. Instead, the Court of Appeal relied on section 954's consolidation clause. As noted, the consolidation clause states that "if two or more accusatory pleadings are filed in [related] cases *in the same court*, the court may order them to be consolidated." (§ 954, italics added.) Focusing on the italicized phrase, the Court of Appeal interpreted the clause as requiring a court order only in that specified circumstance. Thus, the Court of Appeal interpreted the clause in a manner that supported the following negative inference: If two or more accusatory pleadings are filed in related cases *but in some different court from the court where the matter is pending*, a court order is *not* required for them to be consolidated, and the district attorney can consolidate them unilaterally. (See *Henson, supra*, 28 Cal.App.5th at p. 505.) The negative inference that the Court of Appeal drew from the consolidation clause would be more obvious if the clause provided: ". . . if two or more accusatory pleadings are filed in [related] cases in the same court, a court order is required for ~~the court may order~~ them to be consolidated." Phrased that way, the clause would suggest that a court order is not otherwise required, and that is precisely the way the Court of Appeal construed the clause.

In support of its interpretation, the Court of Appeal recognized that it needed to consider how section 954 operated before court unification.[7]  Prior to unification, the complaint in a felony case was filed at the municipal court, although technically speaking it was filed with a magistrate, not with the court.  (See *Koski v. James* (1975) 47 Cal.App.3d 349, 354–355.)  After the magistrate held a preliminary examination and issued a commitment order, the district attorney then filed an information in the superior court.  In the Court of Appeal's view, this two-court structure informed the meaning of section 954's use of the phrase "in the same court."  The Court of Appeal reasoned as follows:  Before court unification, a court order was required to consolidate two or more felony complaints because they were filed "in the same court" (the municipal court), and likewise a court order was required to consolidate two or more informations because they, too, were filed "in the same court" (the superior court), but a court order was not required to allow the district attorney to consolidate two or more complaints into a single information because the information and the complaints were not filed "in the same court."[8]  The Court of Appeal further

---

[7]    Court unification occurred between 1998 and 2002, and section 954 has not been changed since 1951.

[8]    In reaching this conclusion, the Court of Appeal glossed over the fact that, before court unification, the felony complaint was not actually filed with the municipal court; rather, it was filed with the magistrate, who was not acting as an officer of the municipal court.  (See *Koski v. James*, *supra*, 47 Cal.App.3d at pp. 354–355.)  Thus, the focus on the phrase "in the same court" — a focus that was critical to the Court of Appeal's reasoning — reflected a misunderstanding of the nature of magistrate proceedings.  This point is discussed in more detail below, but it is mentioned briefly here to avoid confusion.

reasoned that if the same rule continued to apply after court unification, then the district attorney in the present case did not need a court order to consolidate the felony complaints in magistrate cases 1499 and 3119 into a single information. (See *Henson*, *supra*, 28 Cal.App.5th at pp. 505–510.)

Having set up the problem in those terms, the Court of Appeal noted that court unification was intended to effect an administrative change in the organization of the judiciary, not a change in criminal procedure. Therefore, although there was, after court unification, a single court in each county, " 'that single court [still] has two divisions corresponding to the former municipal and superior courts.' " (*Henson*, *supra*, 28 Cal.App.5th at p. 510, italics omitted, quoting *Lempert v. Superior Court*, *supra*, 112 Cal.App.4th at p. 1169.) As such, the phrase "in the same court" continued to have the same practical meaning both before and after court unification. (See *Henson*, at pp. 507–510.) In the words of the Court of Appeal, when section 954 "refers to two or more accusatory pleadings being filed 'in the same court,' it is referring to two or more such pleadings being filed at the stage of proceedings historically conducted in municipal court *or* at the stage historically conducted in superior court. Thus, while court permission is required to consolidate two complaints or two informations, [court permission] is *not* required to incorporate two complaints into a single information where that information is the People's first pleading at the superior court stage of proceedings." (*Henson*, at p. 510, fn. omitted.)

Applying its interpretation to the facts of this case, the Court of Appeal majority concluded that the district attorney acted properly when filing an information that effectively consolidated the complaints in magistrate cases 1499 and 3119

12

into a single combined information. The Court of Appeal further concluded that the trial court erred by looking only at the record of the preliminary examination in magistrate case 3119 to find no probable cause to support counts 1 through 4 of that combined information. Accordingly, the Court of Appeal reversed the trial court's order of dismissal. (*Henson*, *supra*, 28 Cal.App.5th at pp. 513–514.)

### 2. *Court of Appeal's Dissenting Opinion*

The dissenting justice in the Court of Appeal asserted that the majority had adopted a strained reading of section 954's consolidation clause in order to draw the negative inference that supported its conclusion. (*Henson*, *supra*, 28 Cal.App.5th at p. 524, dis. opn. of Smith, J.) In the dissent's view, the consolidation clause's purpose is merely to give courts authority to consolidate related pleadings; its purpose is not to state the circumstances in which a consolidation order is required, thus implying that in other circumstances one is not required. (*Id.* at pp. 524, 528–529, dis. opn. of Smith, J.) The dissent also pointed out that the majority's interpretation had not been advocated in the trial court on behalf of the People. (*Id.* at pp. 522–523, 530, dis. opn. of Smith, J.) Rather, the prosecutor had relied solely on section 954's joinder clause, arguing that the information could join appropriately related offenses without need for a court order. (*Henson*, at pp. 522–523, 530, dis. opn. of Smith, J.) In rejecting the latter argument, the dissent employed a policy rationale, noting that the unilateral joinder of offenses that had been the subject of different preliminary examinations would lead to unacceptable levels of confusion because the evidence supporting the information would necessarily be located in different case files. (*Id.* at pp. 523, 530, 532–534, dis. opn. of Smith, J.)

The dissent also relied on section 739, which provides: " 'When a defendant has been examined and committed . . . it shall be the duty of the district attorney . . . to file in the superior court . . . an information against the defendant which may charge the defendant with either the offense or offenses named in *the* order of commitment or any offense or offenses shown by *the* evidence taken before *the* magistrate to have been committed.' " (*Henson, supra*, 28 Cal.App.5th at p. 519, dis. opn. of Smith, J., some italics omitted.) In the dissent's view, the references in section 739 to "*the* order of commitment," "*the* evidence," and "*the* magistrate" (§ 739, italics added) implied that each information had to be supported by a single magistrate proceeding. (See *Henson*, at pp. 524–527, dis. opn. of Smith, J.)

## II. DISCUSSION

In part II.A., we discuss in general terms the nature and role of magistrate proceedings. In part II.B., we turn to section 954 and consider whether the joint information filed in this case was appropriate under that section. Next, in part II.C., we explain the error of the majority and dissenting opinions in the Court of Appeal. Finally, in part II.D., we address whether the trial court here erred when, for purposes of resolving defendant's section 995 motion, it looked only at the record of magistrate case 3119 and found no probable cause to support charges 1 through 4 of the joint information.

### A. The Nature of Magistrate Proceedings and the Due Process Protections They Afford

In modern criminal practice, we tend to think of a magistrate as a state official who conducts a preliminary examination of the People's case, and that description is

certainly accurate (see §§ 859b, 860), but the Penal Code defines the term "magistrate" as "an officer having power to issue a warrant for the arrest of a person charged with a public offense" (§ 807). It is true that peace officers often have authority to make arrests without a magistrate's warrant (see §§ 836, 849), and with the growth of modern law enforcement agencies, crime victims now tend to seek recourse from city police departments and county sheriff's offices. But decisions from the 19th century and the first half of the 20th century make clear that, at one time, crime victims frequently sought recourse directly from a magistrate. (See, e.g., *People v. McDaniels* (1903) 141 Cal. 113; *People v. George* (1898) 121 Cal. 492.) The victim of a crime would approach a magistrate, execute an affidavit describing the relevant events, and the magistrate would determine, based on the affidavit and the testimony of any other witnesses, whether to issue an arrest warrant. (Stats. 1872, Pen. Code, §§ 811, 813, 814.) Then, after the accused was arrested and brought before the magistrate (*id.*, § 858), the magistrate would hold a preliminary examination of the case (*id.*, §§ 860–869) and decide whether the accused should be " 'held to answer' " (*id.*, § 872). The word "held" in this context was employed in a quite literal sense; being " 'held to answer' " meant being committed to the custody of the county sheriff pending the outcome of a court trial (*id.*, § 872; see *id.*, §§ 872, 876, 877), and once that commitment order issued, it was the duty of the district attorney to file an information in the superior court within 30 days, initiating a court proceeding to determine whether the accused was guilty of the charged offense (*id.*, § 809).

Today, crime victims rarely approach a magistrate directly, but the magistrate's formal role has not changed, and what this history makes clear is that the proceeding before the

15

magistrate is not merely the early stage of a trial court prosecution. Rather, it is a completely independent proceeding that is primarily concerned with the arrest and temporary detention of the defendant. Moreover, at one time, the magistrate proceeding could be initiated by a private party acting without the concurrence of any elected prosecutorial authority, much as today a private party can file a police report without the concurrence of any elected prosecutorial authority. This practice changed in 1972, when the Court of Appeal held that due process requires that the local district attorney approve the filing of a criminal complaint. (See *People v. Municipal Court (Pellegrino)* (1972) 27 Cal.App.3d 193, 205–206.) But before 1972, it was not uncommon for the complainant who executed a criminal complaint to be the victim of the alleged crime, a witness, or a peace officer. (See § 806 [requiring that a felony complaint be subscribed by the complainant]; cf. § 739 [requiring that an information be subscribed by the district attorney].)

Consistent with the distinct and limited role of the magistrate, the office of magistrate is institutionally separate from any court. This point tends to be obscured in modern practice because the felony complaint that initiates the magistrate proceeding is filed at the court, but as a technical matter, it is filed with the office of magistrate, not with the court itself, and the judge who holds the preliminary hearing sits as a magistrate, not as a judge. The Court of Appeal explained this point in some detail in *Koski v. James*, a case that was decided when municipal court judges served as magistrates. The court said: "A magistrate is purely a creature of statute, the holder of a statutory office separate and distinct from the elective office of judge. [Citations.] . . . [¶] 'When a judge of a particular judicial

district acts in the capacity of a magistrate, he does not do so as a judge of a particular court but rather as one who derives his powers from [statute]. [Citation.] By initiating proceedings before magistrates, no trial jurisdiction of any court is invoked.' [Citation.] [¶] . . . [¶] . . . [¶] Although the office of magistrate is an office which one holds under [statute] by virtue of being a judge, it is a different office from that of judge and is one conferred by statute not by district election. Preliminary felony proceedings in any judicial district do not invoke the jurisdiction of the elected judge but of the magistrate." (*Koski v. James*, *supra*, 47 Cal.App.3d at pp. 354–355, fn. omitted.)

In summary, the magistrate's primary role relates to a defendant's arrest and detention pending a court trial, and the magistrate represents the office of magistrate, not a court. Therefore, the proceeding that commences *after* the magistrate has issued a commitment order is not merely the next stage in a single ongoing trial court prosecution; rather, it is the *beginning* of that prosecution. (See, e.g., *People v. Tideman* (1962) 57 Cal.2d 574, 579; cf. § 804 [defining "prosecution" specially, and more broadly, for purposes of applying various statutes of limitations].)[9]

The latter point is brought into relief when we consider the constitutional protections that govern the initiation of criminal prosecutions. As the Massachusetts Supreme Judicial Court explained over 160 years ago: "The right of individual

---

[9] The fact that trial court proceedings are institutionally distinct from magistrate proceedings explains why defense counsel must be appointed anew on the date set for the arraignment on the information. (See § 987.1; *Lempert v. Superior Court, supra*, 112 Cal.App.4th at pp. 1170–1171.)

citizens to be secure from an open and public accusation of crime, and from the trouble, expense and anxiety of a public trial, before a probable cause is established by the presentment and indictment of a grand jury, in case of high offences, is justly regarded as one of the securities to the innocent against hasty, malicious and oppressive public prosecutions, and as one of the ancient immunities and privileges of English liberty." (*Jones v. Robbins* (1857) 74 Mass. 329, 344.) In California, however, grand jury indictment is not required; rather, felony prosecutions can be "by indictment *or information*." (§ 682, italics added.) Because indictment by a grand jury protects such an important liberty interest, it follows that comparable protections apply when a felony is prosecuted by information, and indeed that is so.

It has long been held that the Fifth Amendment's guarantee of indictment by grand jury does not apply to the states. (See *Hurtado v. People of State of Cal.* (1884) 110 U.S. 516 (*Hurtado*).) In *Hurtado*, the high court reasoned that so long as a state provides, in advance of instituting a felony prosecution, some threshold procedure that comports with "fundamental principles of liberty and justice," the Fourteenth Amendment's due process guarantee is satisfied. (*Id.* at p. 535.) But the threshold procedure, whatever it might be, must be adequate " 'to secure the individual from the arbitrary exercise of the powers of government.' " (*Id.* at p. 527, quoting *Bank of Columbia v. Okely* (1819) 17 U.S. 235, 244.)[10] The *Hurtado* court

---

[10] The dissent describes the distinction between the threshold procedure and any subsequent court trial as merely a "technical characterization" "of when a felony proceeding

then discussed the magistrate proceeding that, under California law, precedes the filing of an information. Upholding California's practice, the *Hurtado* court declared: "[W]e are unable to say that . . . proceeding by information, after examination and commitment by a magistrate, certifying to the probable guilt of the defendant, with the right on his part to the aid of counsel, and to the cross-examination of the witnesses produced for the prosecution, is not due process of law." (*Id.* at p. 538.)

What *Hurtado* makes clear is that (1) the filing of a felony complaint with a magistrate, (2) the magistrate's preliminary examination of the case, and (3) the magistrate's commitment order, while being in some sense the initiation of a criminal case (see *People v. Martinez* (2000) 22 Cal.4th 750, 754; *In re Harris* (1989) 49 Cal.3d 131, 136–137), are components of a threshold proceeding that precedes the formal trial court prosecution of the defendant and that ensures that the district attorney or other prosecutorial authority does not abuse his or her power.

---

begins." (Dis. opn. of Kruger, J., *post*, pp. 13, 15.) The dissent also argues that the institutional separation between magistrate proceedings and trial court proceedings is "not unassailable" (*id.* at p. 13), and it cites a long list of authorities in an effort to support this proposition (*id.* at pp. 13–14 & 14–15, fn. 4). But the purpose of the threshold proceeding in front of the magistrate is to protect individuals from the arbitrary exercise of governmental power. (*Hurtado, supra*, 110 U.S. at p. 527.) We do not think the word "technical" properly characterizes the high court's important due process holding in *Hurtado*. And, by suggesting that there is only one continuous court proceeding that begins with the filing of a felony complaint and ends with a trial, the dissent casts doubt on the reasoning of *Koski v. James, supra*, 47 Cal.App.3d 349, but it fails to explain why *Koski v. James* is wrong.

(See *People v. Martinez*, at p. 763 ["Although at first glance a felony complaint may appear to be a 'formal charge,' it is not a document upon which a defendant may be subjected to trial"]; *Jones v. Superior Court* (1971) 4 Cal.3d 660, 664 [recognizing "the constitutional mandate which 'protects a person from prosecution in the absence of a prior determination by either a magistrate or a grand jury that such action is justified' "]; *People v. Tideman*, *supra*, 57 Cal.2d at p. 579 ["The prosecution (with the exceptions not here material) commences when the indictment or information is filed in the superior court . . . ."]; see also *Hurtado*, *supra*, 110 U.S. at pp. 537–538.)[11]   For this reason, the felony complaint that initiates this threshold proceeding does not need to be "subscribed" (i.e., signed) by the district attorney (§ 806), and the proceeding does not invoke the jurisdiction of any court (§ 813, subd. (a)).

Significantly, the threshold nature of this proceeding is not just a matter of legal doctrine.  From the accused's point of view, the proceeding before a magistrate does not carry with it the same significance as a trial court prosecution, in that "the filing of a felony complaint, unlike indictment or accusation by information, does not threaten oppressive pretrial incarceration.   The time constraints within which the preliminary hearing must be conducted or the complaint

---

[11]   It is true that under section 739, "an information . . . may charge the defendant with . . . any offense or offenses shown by the evidence taken before the magistrate to have been committed," and therefore after the preliminary hearing, the district attorney can charge new offenses and even offenses rejected by the magistrate.  But the law "does not permit the district attorney to ignore material factual findings of the magistrate." (*Jones v. Superior Court*, *supra*, 4 Cal.3d at p. 666; see *id*. at pp. 666–668.)

dismissed and the defendant released (§ 859b) ensure that the defendant is not subjected to extended anxiety or public opprobrium, and by giving the defendant immediate notice of the charge and opportunity to defend avoid prejudice to the defense." (*Serna v. Superior Court* (1985) 40 Cal.3d 239, 257.)

### B. Section 954's Joinder Clause

In considering whether section 954's joinder clause permits the joint information that the district attorney filed in the present case, it is worth noting that California has long adhered to a policy of promoting judicial economy through the joinder of appropriately related offenses, subject to severance as necessary to protect the interests of the defendant. (See *People v. Ochoa* (1998) 19 Cal.4th 353, 409 [" 'Joinder of related charges . . . ordinarily avoids needless harassment of the defendant and the waste of public funds which may result if the same general facts were to be tried in two or more separate trials . . . .' "]; see generally McDonald, *Prejudicial Joinder under California Penal Code Section 954: Judicial Economy at a Premium* (1989) 20 McGeorge L. Rev. 1235.)

Moreover, prior to 1951, section 954 expressly allowed precisely what the district attorney did here. That is, it allowed the district attorney to join related felony offenses in a single "information" without the necessity of obtaining a court order. The statute then provided in relevant part: "An indictment, *information*, or complaint may charge two or more different offenses connected together in their commission, or different statements of the same offense[,] or two or more different offenses of the same class of crimes or offenses, under separate counts, and if two or more indictments or informations are filed in such cases the court may order them to be consolidated."

(Stats. 1927, ch. 611, § 1, p. 1042, italics added.) Importantly, nothing in the pre-1951 version of the statute suggested that the joinder of related felony offenses in a single information was only permitted if the offenses had already been joined in magistrate proceedings. Indeed, such a limitation would have made no sense since magistrate proceedings were not (and are not) court proceedings, and section 954 originally dealt only with pleadings filed in a court.[12] Moreover, prior to 1972, magistrate proceedings could be initiated by a private party acting without the concurrence of the district attorney. If multiple crime victims filed multiple felony complaints alleging related offenses, the district attorney's only opportunity to exercise his or her express right to join those offenses was when filing the information.

Notably, section 954 made clear that if the district attorney filed multiple informations alleging related offenses,

---

[12] Before 1927, section 954 applied exclusively to court proceedings. In 1927, however, section 954's joinder clause was amended to replace "indictment or information" (Stats. 1915, ch. 452, § 1, p. 744) with "indictment, information, *or complaint*" (Stats. 1927, ch. 611, § 1, p. 1042, italics added), thus making the joinder clause applicable to magistrate pleadings. But nothing about that change suggests an intent to restrict the already existing power to join related offenses in court pleadings, or to make joinder at the information stage dependent on a prior joinder at the complaint stage. The dissent expresses concern about the authority of magistrates to consolidate complaints under section 954's consolidation clause, which only refers to the "court." (§ 954; see dis. opn. of Kruger, J., *post,* pp. 14–15, fn. 4.) That issue is not before us, and nothing in our opinion should be read to suggest that we have decided the issue.

court action was required to consolidate them.[13] This requirement was not inconsistent with the district attorney's unilateral authority to join related offenses in a single pleading, because once multiple pleadings are pending before a court, the court has an interest in controlling its own docket. But the pre-1951 version of section 954 only authorized court consolidation of "two or more indictments or informations," not two or more complaints. To understand the latter limitation, it is necessary to consider the structure of the California criminal courts before court unification. At that time, misdemeanors and infractions were, with few exceptions, prosecuted by complaint filed in the municipal court (former § 740, Stats. 1951, ch. 1674, § 6, p. 3831; former § 1462, Stats. 1976, ch. 1288, § 21, p. 5765), whereas felonies were prosecuted by indictment or information filed in the superior court (former § 737, Stats. 1987, ch. 828, § 49, p. 2593). (See *People v. Frederickson* (2020) 8 Cal.5th 963, 994; *In re McKinney* (1968) 70 Cal.2d 8, 13.) Therefore, because the pre-1951 version of section 954 only authorized the

---

[13] The dissent frequently refers to the consolidation of *charges*, arguing that here the district attorney was able to consolidate charges without the requisite court permission. (See dis. opn. of Kruger, J., *post*, pp. 1–7, 10–11, 17.) We disagree. Section 954 does not discuss the consolidation of "charges"; rather, it discusses the consolidation of "pleadings" filed in a "court," requiring court permission to do so. But magistrate proceedings are not court proceedings — a point the dissent discounts (see pp. 18–19, fn. 10, *ante*) — and if no pleadings have been filed in a court, then there is no pending court proceeding and nothing for a court to consolidate. Of course, once the first pleading is filed in a court, a court proceeding begins, but at that point, section 954's joinder clause (not its consolidation clause) comes into play, allowing the joinder of any appropriately related offenses, and not requiring court permission to do so.

consolidation of "two or more indictments or informations," the statute did not give the municipal court any express authority to consolidate pleadings.

In 1951, section 954 was amended to assume its present form. The sentence discussed above was amended to read: "An ~~indictment, information, or complaint~~ <u>accusatory pleading</u> may charge two or more different offenses connected together in their commission . . . or two or more different offenses of the same class of crimes or offenses, under separate counts, and if two or more ~~indictments or informations~~ <u>accusatory pleadings</u> are filed in such cases <u>in the same court,</u> the court may order them to be consolidated." (§ 954, Stats. 1951, ch. 1674, § 45, p. 3836.) As is readily apparent, the generic term "accusatory pleading" was substituted for the specific types of pleadings that the prior version of the statute had named, but the use of that generic term — a term that includes misdemeanor complaints — meant that, as a result of the 1951 amendment, section 954 expressly granted municipal courts the power to consolidate pleadings. That new rule was consistent with the general purpose of the 1951 amendment, which was to make the same criminal procedures applicable at all court levels. (See Legis. Counsel, Rep. on Sen. Bill No. 543 (1951 Reg. Sess.) July 12, 1951, p. 12.)

In addition, to maintain the strict separation of misdemeanor jurisdiction from felony jurisdiction, the 1951 amendment to section 954 also added the phrase "in the same court." The addition of that phrase meant that a municipal court could consolidate accusatory pleadings filed in the municipal court (i.e., misdemeanor complaints), and a superior court could consolidate accusatory pleadings filed in the superior court (i.e., indictments and informations), but neither court could consolidate pleadings filed in their respective courts

with those filed in the other. Thus, the phrase "in the same court" maintained the jurisdictional boundary between the superior courts and the inferior courts.[14]

These jurisdictional lines began to blur in 1992 (see *People v. Frederickson, supra*, 8 Cal.5th at p. 995 [describing a 1992 amendment that slightly broadened the jurisdiction of the municipal and superior courts]), and they disappeared altogether by 2002. In 1994, the voters eliminated the justice courts by approving Proposition 191, and then in 1998, the voters approved Proposition 220, permitting unification of the municipal and superior courts. The unification of these courts was intended to streamline court administration, and it was presented to the county courts only as an option. Nonetheless, by 2002 the judges in all of California's counties had opted to unify their courts, with the result that each county then had only a superior court.

With the advent of court unification, an accusatory pleading — whether charging a felony or a misdemeanor — was filed in the superior court. However, in many respects, court unification did not bring about any significant change in

---

[14] In *Kellett*, this court recognized an exception to this jurisdictional boundary. We said: "Section 954 . . . authorizes the *joinder* of a misdemeanor count and a felony count in a prosecution in the superior court." (*Kellett v. Superior Court of Sacramento County* (1966) 63 Cal.2d 822, 826, fn. 3, italics added; see *In re McKinney*, *supra*, 70 Cal.2d at p. 13 [recognizing the superior court's jurisdiction to adjudicate a joined misdemeanor count].) This exception, based on the *joinder* clause of section 954, did not change the rule that a court could only *consolidate* pleadings filed "in the same court" (§ 954), meaning that the superior court could not consolidate a municipal court complaint with a superior court information.

criminal procedure. For example, before court unification, judges (then of the municipal courts) sat as magistrates to hold preliminary hearings in felony cases, and after court unification, judges (now of the superior courts) continued to sit as magistrates for the same purpose. (See *People v. Crayton* (2002) 28 Cal.4th 346, 359–360.) Likewise, both before and after court unification, the magistrate did not preside as the judge of any court, and he or she did not exercise trial jurisdiction. Hence, it is still the law today that if a defendant enters a guilty plea before a magistrate, the magistrate — despite being a superior court judge — must certify the case to the trial court for entry of judgment. (§ 859a, subd. (a).) Similarly, if the magistrate conducts a preliminary examination and orders that the defendant be held to answer (§§ 860, 872), the district attorney must file an information "in the superior court" (§§ 739, 860). That filing is necessary because even though the magistrate is a superior court judge, the superior court is institutionally distinct from the office of magistrate, which conducted the preliminary hearing. (Compare § 806 with §§ 739, 860.)

The misapprehension that arose at all stages of the present case may be attributed, in large part, to court unification. Before court unification, it was relatively easy to distinguish magistrate proceedings from trial court proceedings because they occurred, as an administrative matter, in two different courts. But after court unification, the felony complaint that initiates a magistrate proceeding is filed at the same superior court that later conducts the trial (assuming the defendant is held to answer), and the magistrate who presides at the preliminary examination is a superior court judge. Moreover, the trial court proceeding often bears the same case number as the magistrate proceeding that precedes it. With

everything taking place under the administrative oversight of the superior court, it is easy to imagine, as the dissent does (see, e.g., dis. opn. of Kruger, J., *post*, pp. 10–11, 13–14, and 14–15, fn. 4), that the preliminary examination and the trial are successive stages in a single ongoing proceeding that begins with the filing of the felony complaint. Not so. Rather, as we clarified above, the felony complaint is filed "with the magistrate" (§ 806), not with the court, and the first pleading in a felony case that is filed *with the court* — the first pleading that must be subscribed by the district attorney and that initiates the actual court prosecution of the defendant — is the information. It is only with the filing of that information that the superior court begins to exercise its jurisdiction.

Once the institutional separation between magistrate proceedings and trial court proceedings is fully appreciated, it becomes clear that pleadings filed in magistrate proceedings do not limit the district attorney's joinder power under section 954, a statute that is primarily concerned with *trial court* proceedings. Since 1951, section 954's joinder clause has provided: "An accusatory pleading may charge two or more different offenses connected together in their commission . . . or two or more different offenses of the same class of crimes or offenses . . . ." (§ 954.) The information that initiates a felony case is without question an accusatory pleading (see § 691), and therefore under the express terms of section 954, the district attorney is free to join in that information different offenses connected in their commission or of the same class, and no court order is required to that end. The only limitations section 954 imposes on this joinder power concern the way in which the offenses must be related and the grant of authority to trial courts to sever joined offenses when necessary to protect the

interests of the defendant. When a law authorizes an act, as section 954 clearly does, it does not need to expressly authorize each individual way the act can be carried out. Therefore, section 954 need not specify that the joinder power extends to offenses that were the subject of different magistrate proceedings. Indeed, the contrary rule, limiting joinder to offenses that were the subject of a single magistrate proceeding, would ignore the fact that magistrate proceedings are institutionally distinct proceedings that, prior to 1972, could be initiated without the concurrence of the district attorney. In light of the California policy favoring joinder, it would make no sense for the district attorney's joinder power at the information stage to depend on how many felony complaints different victims of related crimes may have filed. Furthermore, in the present case there is no indication of sharp practices on the part of the district attorney. Rather, the offenses at issue here are of the same class of offense, and their joinder appears to be fully consistent with the underlying purposes of the joinder statute, which is to promote judicial economy. Accordingly, we find nothing improper in the joint information that the district attorney filed here.[15]

---

[15] This case is not the first in which a district attorney has filed a single information joining charges from separate complaints. (See *People v. Lopez* (July 23, 2010, A124818) [nonpub. opn.]; *People v. Brewton* (July 11, 2002, F036610) [nonpub. opn.]; see also *People v. Cooper* (July 30, 2014, A139419) [nonpub. opn.].) The decisions in these other cases are not published in the official reports, but without treating them as legal precedent, we may take judicial notice of their statements of fact. (See *People v. Hill* (1998) 17 Cal.4th 800, 847, fn. 9.)

## C. The Error of the Court of Appeal

As noted, the Court of Appeal majority relied on section 954's consolidation clause, not its joinder clause, to find authority for what the district attorney did in this case. The Court of Appeal did not interpret section 954's consolidation clause as merely defining the circumstances in which *a court* is permitted to consolidate multiple pleadings; it also interpreted the clause as defining the circumstances in which *a district attorney* is not permitted to do so. The Court of Appeal concluded that the district attorney cannot consolidate pleadings when they are filed "in the same court" as the court where the consolidation is taking place (§ 954), but the Court of Appeal concluded that the district attorney is otherwise free to consolidate pleadings without court approval. (*Henson*, *supra*, 28 Cal.App.5th at p. 510.) Based on that reading of section 954, the Court of Appeal majority further concluded that *before court unification*, the district attorney did not need court approval to consolidate two felony complaints into a single information because the municipal court where the felony complaints were filed was a different court from the superior court where the information was filed. (*Henson*, at p. 505.) The question the majority then sought to answer is whether the phrase "in the same court" continued to serve essentially the same role *after court unification*. The majority concluded that it did, arguing that (1) courts favor an interpretation of statutory language that gives effect to that language, and (2) court unification was intended to effect a change in the administration of the courts, not a change in criminal procedure. On that basis, the Court of Appeal majority held that after court unification, a district attorney does not need court approval to consolidate two felony complaints into a single information because the magistrate

stage of the proceeding can be treated as if it were occurring in a different court from the trial court stage of the proceeding. (*Id.* at pp. 507–510.)

But the Court of Appeal overlooked the fact that before court unification, the felony complaint that initiated the magistrate proceeding was not filed in the municipal court or in *any* court; rather, it was "filed with the magistrate" (§ 806), and that continues to be true after court unification (*ibid.*). Therefore, the phrase "in the same court" was not added to section 954 to distinguish between magistrate proceedings and superior court proceedings in felony cases, as the Court of Appeal concluded. Rather, as discussed above, it was added to section 954 to prevent the superior court from consolidating a misdemeanor complaint with a felony information, which would have eroded the jurisdictional boundary between the superior courts and the inferior courts.[16]

But that error aside, we also disagree with the Court of Appeal's conclusion that section 954's consolidation clause, by defining the circumstances in which a court is permitted to consolidate pleadings, implicitly authorizes a district attorney

---

[16] Because court unification was optional, some counties continued to have a two-tiered court system during the years immediately following approval of Proposition 220 in 1998, and therefore the changes made to state law to facilitate court unification did not include deletion of the phrase "in the same court" from section 954. In counties that continued to have both municipal and superior courts, the phrase "in the same court" had the same meaning it had always had, preserving the jurisdictional boundaries between the two court levels. By 2002, however, all California counties had unified their courts. At that point, section 954's use of the phrase "in the same court" became surplusage.

to consolidate pleadings without court approval in all other circumstances. (See *Henson, supra,* 28 Cal.App.5th at p. 510.) In our view, the more natural reading of section 954's consolidation clause — which provides that "the court may order [pleadings] to be consolidated" (§ 954) — is that it does not confer any consolidation authority on the district attorney, and therefore the Court of Appeal's reliance on the consolidation clause was misplaced.

We further conclude that the Court of Appeal's dissenting opinion is unpersuasive. The dissenting justice opined that the Penal Code contemplates the following linear progression in felony cases: (1) the filing of a complaint (along with the assignment of a single case number and the creation of a single case file); (2) the arraignment on the complaint; (3) the preliminary examination; (4) the magistrate's commitment order; (5) the filing of the information (having the same case number and case file as the magistrate proceeding); (6) the arraignment on the information; (7) the filing of any motions; (8) the trial; (9) the verdict; (10) the judgment, etc. According to the Court of Appeal dissent, section 954's joinder clause operates primarily at step (1) in this progression, and although it might also operate at step (5), it does so only when joining offenses that were already joined at step (1). (See *Henson, supra,* 28 Cal.App.5th at pp. 525–527, 532, dis. opn. of Smith, J.) We reject the dissent's reasoning because it finds no support in the text of section 954, and because it fails to address, as discussed above, that magistrate proceedings are institutionally distinct from trial court proceedings. Because the information in this case initiated a new proceeding in the superior court — one that was institutionally distinct from the magistrate proceeding — the district attorney was free, under section 954's joinder clause, to

join in the information any appropriately related offenses without the necessity of obtaining a court order. (See p. 23, fn. 13, *ante* [discussing the dis. opn. of Kruger, J.].)[17]

In support of its linear one complaint/one information model of criminal procedure, the Court of Appeal dissent relied heavily on section 739. As noted, section 739 provides: "When a defendant has been examined and committed . . . , it shall be the duty of the district attorney . . . to file in the superior court . . . an information against the defendant which may charge the defendant with either the offense or offenses named in *the* order of commitment or any offense or offenses shown by *the* evidence taken before *the* magistrate to have been committed." (Italics added.) The dissenting justice reasoned that if two felony complaints are filed, and if, as a result, two different magistrates issue two different commitment orders based on two different evidentiary presentations occurring at two different preliminary examinations, then the various offenses named in the different commitment orders (or shown by the different evidentiary presentations) cannot be joined in a single information because, under section 739, an information can only charge offenses named in "the" commitment order or shown by "the" evidence taken before "the" magistrate (§ 739). (*Henson*, *supra*, 28 Cal.App.5th at pp. 524–527, dis. opn. of Smith, J.)[18]

---

[17] Many of the arguments made by the dissent in the Court of Appeal are adopted by the dissent in the present court, and our critique of the one applies, *mutatis mutandis*, to the other.

[18] To support this argument, the Court of Appeal dissent also relied on section 1009, which refers to "*the* evidence taken at *the*

Section 739, however, is inapposite on the issue we resolve here. Section 739 is not a joinder statute; rather, its purpose is to set forth the place of filing, timing, and general form of the information, and it references the offenses that may be charged in the information only to specify that the text of the commitment order does not *limit* those offenses. The wording of section 739 is permissive, not restrictive, allowing the district attorney to file "any offense or offenses," whether named in the commitment order or shown by the evidence presented to the magistrate. The fact that section 739 refers to "the" commitment order, "the" evidence, and "the" magistrate must be considered in the context of the statute's purpose. Because section 739 is not concerned with joinder, and because its purpose is merely to explain the procedural steps that ordinarily follow after the issuance of a particular commitment order, it is perfectly natural for the statute to speak of "the" commitment order, "the" evidence, and "the" magistrate. But the statute does not preclude the possibility of multiple magistrate proceedings supporting an information. In that situation, section 739's reference to "the" commitment order, "the" evidence, and "the" magistrate signifies the commitment order, evidence, and magistrate that corresponds to a particular offense charged in the joint information. Thus, section 739 was followed to the letter here. As to magistrate case 1499, the district attorney filed in the superior court, "within 15 days after the

---

preliminary examination" (italics added) when discussing the scope of the district attorney's authority to amend an information. (*Henson, supra,* 28 Cal.App.5th at p. 525, fn. 9, dis. opn. of Smith, J.) The language of section 1009 tracks the language in section 739, and what we say here about section 739 applies equally to section 1009.

commitment, an information against the defendant which . . . charge[d] the defendant with . . . the offense or offenses named in the order of commitment" for that particular case. (§ 739.) And the district attorney did the same as to magistrate case 3119. The information that satisfied section 739 as to each magistrate case was the *same* information, but nothing in section 739 prohibits that manner of proceeding.

Importantly, adopting the Court of Appeal dissent's view of section 739 would require us to violate a canon of statutory interpretation, since it would mean that section 739 silently modifies section 954. Under the reasoning employed by the dissent, section 954's plain language permits the joinder of related charges at the information stage, but section 739 — which is not even a joinder statute — precludes such joinder. (See *Henson*, *supra*, 28 Cal.App.5th at p. 527, dis. opn. of Smith, J.) Such a significant modification to section 954 cannot be based solely on the fact that section 739 refers to "the" commitment order, "the" evidence, and "the" magistrate. If the Legislature had intended the joinder clause of section 954 to depend on there being a previous joinder at the felony complaint stage, we think it would have said so. It would not, instead, have expected courts to infer that rule from the use of the definite article in section 739, a statute that makes no reference to section 954. Nor would it have expected courts to indulge in the presumption offered by the dissenting opinion in this court regarding the application of section 739. (See dis. opn. of Kruger, J., *post*, p. 10.)[19]

---

[19] It is true that section 739 imposes a 15-day time limit for filing the information (see § 860), and this 15-day time limit

The Court of Appeal dissent also argued that its linear one complaint/one information model of criminal procedure was necessary to avoid administrative confusion and related disruption. (*Henson, supra,* 28 Cal.App.5th at pp. 523, 530, 532–534, dis. opn. of Smith, J.) In our view, the administrative complexities that may arise from the joinder of charges that were the subject of different magistrate proceedings are no more daunting than the administrative complexities that arise from a court's order consolidating multiple pleadings. We think these complexities are easily addressed, and therefore we do not think that considerations of judicial administration are material in this context. For example, the complexities that arose here were twofold. First, there was the unusual wrinkle that the office of the public defender had a conflict as to some of the charges alleged in the joint information but not as to others. But that will not be true in most cases, and it is easily handled in the manner that it was handled here. Second, the clerk's office in this case was confused because the filing of a joint information alleging charges from different magistrate proceedings is relatively rare, and therefore the pleading that the district attorney attempted to file in this case was unfamiliar. But in the future, a district attorney need only cite our opinion, and a clerk's office will be able to accept the filing and link the

---

places substantial constraint on the ability of the district attorney to join related offenses from different magistrate proceedings. Specifically, the joint information must be filed within 15 days of the *earliest* commitment order. But we see no reason why this constraint should be interpreted as an indication that the Legislature did not intend to allow joinder in those circumstances where the 15-day time limit can be met.

magistrate files with relative ease, just as clerk's offices regularly do when cases are consolidated by court order.

Of course, in counties where a trial court proceeding bears the same case number as the magistrate proceeding that precedes it, some provision will need to be made for cases in which the district attorney joins charges from multiple magistrate proceedings. Perhaps the best solution is the one that obtained here: The case numbers of all the relevant magistrate proceedings were listed on the joint information, and one of those case numbers was designated as the case number for purposes of the trial court proceeding that the information was initiating. Likewise, some provision will need to be made for linking multiple magistrate case files with a single trial court case file. These are practical concerns that can be easily addressed at the local level, and the advent of electronic filing will no doubt facilitate that process. In all events, the administrative tasks associated with the rule we announce today do not require us to ignore the plain language of section 954. Accordingly, we decline to adopt the linear one complaint/one information model for felony prosecutions.[20]

---

[20] Defendant argues that due process protections preclude the joinder of related offenses from different magistrate proceedings. We disagree. Section 954 allows a defendant to seek severance of joined charges "in the interests of justice and for good cause shown," thus protecting defendant's due process rights. (See, e.g., *People v. Merriman*, *supra*, 60 Cal.4th at p. 46 ["Even when [a reviewing court upholds the denial of a severance motion, it] must further inquire whether events *after* the court's ruling demonstrate that joinder actually resulted in 'gross unfairness' amounting to a denial of defendant's constitutional right to fair trial or due process of law."].)

### D. Defendant's Section 995 Motion

Having determined that Section 954's joinder clause supports joinder of counts 1 through 4 of the information, we consider whether the trial court erred in ruling as to counts 1 through 4 "[t]hat the defendant had been committed without reasonable or probable cause" (§ 995, subd. (a)(2)(B)). The trial court found insufficient support for counts 1 through 4 because it concluded that the record of two separate preliminary examinations cannot be used to support a single information, and therefore it only considered the record in magistrate case 3119. In the trial court's view, the case pending before the superior court was a continuation of magistrate case 3119, and magistrate case 1499 was a separate proceeding. The trial court thought it could not consider the record of a separate proceeding without an order consolidating the two cases. We reject that reasoning.

---

Because defendant did not avail himself of section 954's severance option, he cannot challenge the constitutionality of that section as applied to him. Instead, defendant argues that, despite the severance option, section 954 is facially unconstitutional because it places the burden on defendants to move for severance. Defendant cites no relevant authority for this argument, which equally calls into doubt the constitutionality of the Federal Rules of Criminal Procedure. (See Fed. Rules Crim. Proc., rules 8, 14, 18 U.S.C. [allowing joinder of appropriately related charges, subject to a motion for severance].) Moreover, defendant concedes that related charges may be joined at the felony complaint stage, which would place him in the same position of needing to move for severance. Defendant does not explain why joinder at the information stage requires a different constitutional rule. Finally, defendant cannot complain that the joint information failed to give him notice of the charges alleged against him. Accordingly, we reject defendant's due process arguments.

As we explain today, a magistrate proceeding is (and has always been) a separate proceeding from a trial court proceeding, and therefore the circumstance that the trial court needed to look at the record of a separate proceeding to resolve defendant's section 995 motion is of no legal consequence. Accordingly, we conclude that when a trial court addresses a section 995 motion, it is free to consider the records of multiple magistrate proceedings and no consolidation of those proceedings, or their records, is necessary. Indeed, if a trial court were not permitted to do so, then the district attorney's broad authority under section 954's joinder clause to join related charges in a single information would be unduly constrained. Therefore, the trial court erred when it looked only at the record of magistrate case 3119 and found no probable cause to support charges 1 through 4 of the joint information.

## III. DISPOSITION

The judgment of the Court of Appeal is affirmed except insofar as it directs the consolidation of magistrate case 1499 and magistrate case 3119. In resolving defendant's section 995 motion on remand, the trial court is free to consider the records of both magistrate cases, and no consolidation of those cases is necessary.

**JENKINS, J.**


**We Concur:**

**CANTIL-SAKAUYE, C. J.**
**CORRIGAN, J.**
**GUERRERO, J.**

PEOPLE v. HENSON

S252702


Dissenting Opinion by Justice Kruger


As the dissenting justice in the Court of Appeal observed, the question of felony charging procedure at issue in this case "arises from an unusual situation." (*People v. Henson* (2018) 28 Cal.App.5th 490, 514 (dis. opn. of Smith, J.) (*Henson*).) The majority gives an equally unusual answer.

As a rule, a court order is required to consolidate charges stemming from different "accusatory pleadings" — a term that includes both criminal complaints and the informations that follow. (Pen. Code, § 954; see *id.*, § 691, subd. (c).) But here the district attorney argues that on the rare occasion when a defendant is held to answer on two different criminal complaints within the span of 15 days — the statutory time period for filing an information after a defendant's preliminary examination on a complaint (*id.*, § 739) — a prosecutor may file a single information charging both sets of offenses, thereby in effect consolidating the criminal cases without the court leave that would be required in all other instances.

The majority approves this maneuver, understanding the result as dictated by language in Penal Code section 954 allowing prosecutors to charge more than one offense in an information. I do not share this understanding, and so I would not approve this unusual deviation from standard charging procedures.

1

**A.**

On two separate occasions in early 2016, the district attorney filed two separate criminal complaints against defendant Cody Wade Henson, based on separate incidents. Although the complaints were filed months apart — based on incidents that likewise occurred months apart — it so happens that the preliminary hearings in the two cases were held in back-to-back weeks. The magistrate issued an order holding Henson to answer to the charges in both cases.

Rather than filing two informations — one for each set of charges — and asking the court to consolidate the cases, the district attorney combined charges from both cases in a single information and presented that "joint" information to the superior court for filing. This was evidently not a kind of filing the superior court had seen much before; confusion ensued while court personnel worked to determine how, precisely, the two criminal cases against Henson had come to be consolidated without a court order and what consequences would follow (including, ultimately, the disqualification of one of Henson's defense attorneys). Nor is it a kind of filing any California court has seen much before. Indeed, the parties here have found no other example of a similar "joint" information, filed without court approval, in any reported decision in California judicial history.

Whether this unusual filing was permissible turns primarily on two sections of the Penal Code governing the early stages of felony cases. Penal Code section 739, which governs the filing of informations, provides: "When a defendant has been examined and committed, as provided in Section 872, it shall be the duty of the district attorney of the county in which the

offense is triable to file in the superior court of that county within 15 days after the commitment, an information against the defendant which may charge the defendant with either the offense or offenses named in the order of commitment or any offense or offenses shown by the evidence taken before the magistrate to have been committed." (Pen. Code, § 739 (section 739).)

Penal Code section 954, for its part, contains general instructions for the handling of cases involving multiple offenses or multiple statements of the same offense. We are here concerned only with its first sentence, which contains two clauses pertaining to the contents of accusatory pleadings. The first clause — the so-called "joinder clause" — provides that a single accusatory pleading may charge more than one offense: "An accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes or offenses, under separate counts." (§ 954 (section 954).) The "consolidation clause," for its part, explains the process by which charges from separate accusatory pleadings may be consolidated into a single accusatory pleading: "[I]f two or more accusatory pleadings are filed in such cases in the same court, the court may order them to be consolidated." (*Ibid.*)

Here is how the statutes ordinarily work in the typical felony case that is initiated by the filing of a criminal complaint. (See Pen. Code, § 806 [requirements for filing a criminal complaint]; *In re Harris* (1989) 49 Cal.3d 131, 137; *Lempert v. Superior Court* (2003) 112 Cal.App.4th 1161, 1168.) Once the complaint is filed, "a magistrate of the court in which the

complaint is on file" (Pen. Code, § 859) conducts a preliminary examination to determine whether the charges in the complaint are supported by probable cause to believe the defendant committed the offense or offenses, and, if so, issues an order holding the defendant to answer. (*Id.*, § 872, subd. (a); see *People v. Maldonado* (2009) 172 Cal.App.4th 89, 94–95; *Lempert*, at pp. 1168–1169.) Under section 739, the People then have 15 days from the date of this commitment order to file an information in superior court charging the same offenses or other offenses shown by the preliminary evidence. (§ 739.) The defendant is then arraigned — and ultimately tried — on the charges in the information. (*Lempert*, at p. 1169; see *Maldonado*, at pp. 94–95.)

If the People wish to consolidate the charges contained in two or more informations (or other "accusatory pleadings . . . filed in . . . the same court"), they must file a motion. (§ 954; see, e.g., *Belton v. Superior Court* (1993) 19 Cal.App.4th 1279, 1281.) In considering whether to grant the motion and consolidate pleadings for trial, a court generally "weighs 'the potential prejudice'" to the defendant "'against the state's strong interest in the efficiency of a joint trial.'" (*People v. Merriman* (2014) 60 Cal.4th 1, 37.) The law generally favors the joint trial of related offenses, but whether to grant consolidation is ultimately within the discretion of the trial court. (*Ibid.*)

In this case, the majority agrees with the district attorney that no court permission was required to combine the charges from the two complaints filed against Henson into a single information. The majority reasons, as an initial matter, that the consolidation clause of section 954 is inapplicable during the 15-day statutory window between the preliminary examination on

the charges in the complaint and the filing of the information. And although the majority, unlike the Court of Appeal, does not then read into the consolidation clause an affirmative authorization to do what the district attorney did here, the majority does read such authorization into section 954's adjacent joinder clause, which permits a district attorney to charge more than one offense in an accusatory pleading. The power to charge more than one offense in a single information, the majority reasons, necessarily includes the power to charge different offenses that were the subject of different complaints, different preliminary examinations, and different commitment orders, so long as section 739's 15-day time limit is satisfied with respect to all charges. (Maj. opn., *ante*, at p. 2.)

In my view, this conclusion reads too much into section 954's joinder clause and too little into the broader statutory context and historical practice. Let's take the joinder clause first. Again, that clause simply provides, as relevant here, that "[a]n accusatory pleading may charge two or more different offenses" if the offenses are sufficiently related. (§ 954.) Nothing in this language speaks directly to the question before us. Certainly the joinder clause permits a district attorney to charge more than one offense in an information (or in any other accusatory pleading, for that matter). But contrary to the majority's seeming suggestion (maj. opn., *ante*, at pp. 27–28), this does not mean the district attorney can charge any two related offenses the district attorney pleases, in any manner the district attorney pleases. The joinder clause offers no explicit authority to charge more than one offense where the relevant offenses were charged in different complaints, subject to different preliminary examinations, and the subject of different

commitment orders.  Nor does it otherwise address the steps a prosecutor must follow in filing any pleadings, or the process by which charges already filed may be combined into a single pleading for purposes of trial.  Other provisions address those matters, and the joinder clause contains no language purporting to override other applicable law.

In case there was any doubt, history confirms that the purpose of the joinder provision was simply to do what it says: allow the charging of more than one offense in a single accusatory pleading.  Before the joinder clause was added in its present form in 1915, the California rule was generally that "the accusatory pleading could charge but one offense."  (*People v. Tideman* (1962) 57 Cal.2d 574, 579; see *People v. Taggart* (1872) 43 Cal. 81, 83 [demurrer to indictment proper "on the ground that it charges two offenses"].)[1]  "In 1915, however, section 954 was amended to, for the first time in this state, . . . authorize the charging in one indictment or information of 'two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes.' " (*Tideman*,  at p. 580; see 14 Cal.Jur., *supra*, Indictment and Information, § 50, p. 65.)  The effect of these changes was to abrogate "the former rule forbidding the charging of more than one offense in an indictment," under which "the people might be required at the

---

[1]     An earlier amendment to section 954, enacted in 1905, had authorized the joinder of different offenses or different statements of the same offense, but only "if all related to the same act or event."  (14 Cal.Jur. (1924) Indictment and Information, § 50, p. 65; see also *id.* at pp. 65–66 [detailing amendment history of § 954].)

trial to elect upon which charge it would proceed." (14 Cal.Jur., *supra*, Indictment and Information, § 53, p. 69.) Nothing in this post-1915 grant of permission to charge multiple offenses necessarily implies a power to combine previously separate cases at the information stage, as the district attorney did here.

For more concrete guidance about what procedures a prosecutor must follow in combining previously separate charges in a single information, we have to look beyond section 954's joinder clause. One place to start is the very next clause of section 954, the consolidation clause, which says that "if two or more accusatory pleadings are filed in such cases in the same court, *the court* may order them to be consolidated." (Italics added.) And another place to look is section 739, which contains instructions specific to the filing of informations. Section 739, as relevant here, places a "duty" on the district attorney to file "an information" charging the defendant with the offenses "named in the order of commitment" or "shown by the evidence taken before the magistrate to have been committed." (§ 739, italics added.) The uses of the singular — "order," not "orders," "magistrate," not "magistrates" — suggest that a felony information is based on the evidence adduced at a single preliminary hearing before a single magistrate. On this understanding, section 739 works in harmony with both clauses of section 954: The People can, of course, file more than one information, and under section 954's joinder clause, each information may charge more than one offense based on the preliminary hearing evidence. If the People then wish to consolidate charges for trial, they may do so, but they must first seek the court's leave under the consolidation clause of section 954.

The majority worries that accepting this straightforward view of the statutory scheme "would require us to violate a canon of statutory interpretation, since it would mean that section 739 silently modifies section 954." (Maj. opn., *ante*, at p. 34.) But it violates no canon of statutory interpretation to harmonize two statutes; indeed we must do so whenever harmonization is " 'reasonably possible,' " as it is here. (*State Dept. of Public Health v. Superior Court* (2015) 60 Cal.4th 940, 955.)

The Court of Appeal rejected this view for a different reason. In particular, it dismissed the wording of section 739 as unilluminating, citing the general interpretive principle that " 'the singular number includes the plural, and the plural the singular.' " (*Henson, supra*, 28 Cal.App.5th at p. 511, fn. 13, quoting Pen. Code, § 7.) But the general principle is not an absolute rule; as Penal Code section 7 itself cautions, "[w]ords and phrases must be construed according to the context." (Pen. Code, § 7, subd. (16); see *People v. Rodriguez* (2012) 55 Cal.4th 1125, 1133 [the plural does not include the singular where statutory context indicates otherwise].) And, as particularly relevant here, we have also declined to apply section 7's general singular-includes-the-plural rule where it would "lead to an interpretation that runs counter to both the legislative purpose of the statutory scheme and subsequent historical practice." (*People v. Navarro* (2007) 40 Cal.4th 668, 680.) Similar considerations in this case suggest we ought to read section 739 as it was written, rather than through the lens of section 7.

So read, section 739 describes a linear charging process — where the offenses charged in the information are the same offenses shown by the evidence presented at the preceding preliminary hearing — that matches up with the statute's

historical operation. The predecessor to section 739 was first enacted in 1880. As originally enacted, Penal Code former section 809 provided: "When a defendant has been examined and committed, as provided in section eight hundred and seventy-two of this code, it shall be the duty of the district attorney, within thirty days thereafter, to file in the superior court of the county in which the offense is triable an information charging the defendant with such offense." Former section 809 necessarily referred to a single "such offense" because, as already noted, from the time former section 809 was enacted in 1880 until 1915, "the accusatory pleading could charge but one offense." (*People v. Tideman, supra*, 57 Cal.2d at p. 579.) This meant that for the first several decades of former section 809's existence, there was no doubt that an information was limited to charging the offense that had been the subject of a single preliminary examination and/or commitment order — for the simple reason that the information could not charge any other offense in addition to that offense. (See *People v. Vierra* (1885) 67 Cal. 231, 234 ["[S]ection 809 refers to the offense shown by the testimony disclosed in the depositions taken on the preliminary examination before the committing magistrate"]; *People v. Nogiri* (1904) 142 Cal. 596, 598 [power of prosecutor under section 809 limited to filing "an information charging the defendant with the offense for which, after judicial inquiry, he has been held to answer"]; *People v. Bird* (1931) 212 Cal. 632, 637 [the "power of the district attorney under section 809 . . . was confined to the filing of an information charging the offense designated in the order of commitment"].)

Later, after section 954 was modified to allow for the charging of more than one offense in a single accusatory

pleading (see p. 6, *ante*), the Legislature would amend Penal Code former section 809 accordingly — allowing an information issued under former section 809 to charge "the offense, *or offenses*, named in the order of commitment, or any offense, *or offenses*, shown by the evidence taken before the magistrate to have been committed." (Stats. 1927, ch. 617, § 1, p. 1045, italics added.)[2]   But the Legislature did not alter the language of former section 809 in any way that would suggest that it also intended to alter the relationship between the facts presented at the preliminary examination and the charges brought in the ensuing information.

Of course, nothing in section 739 expressly forbids filing an information that draws from the evidence presented at more than one preliminary hearing.  But section 739's instructions do, at the very least, presume the information will match the evidence shown at the preliminary hearing on charges filed in a criminal complaint.  And that presumption likewise fits with the other relevant piece of section 954, the consolidation clause — creating a straightforward process for consolidating charges that have, up to that point in time, been the subject of separate pretrial proceedings.

The majority's position, by contrast, reads section 954's joinder clause as effectively creating a hidden mechanism for the de facto consolidation of cases without need for court leave.

---

[2]   This change followed a 1927 recommendation by a blue-ribbon legislative commission to modify former section 809 to "expressly permit the information to charge either the crime named in the order of commitment or any offense shown by the evidence taken before the magistrate."  (Com. for the Reform of Criminal Procedure, Rep. to Legislature (1927) p. 7.)

Henson's case provides an illustration of how that consolidation works in practice: Henson was first charged on March 7, 2016, when "a complaint was filed in Fresno County Superior Court" and was assigned "case No. F16901499." (*Henson, supra,* 28 Cal.App.5th at p. 495.) The People then commenced a second case against Henson on May 19, 2016, when "a complaint was filed in Fresno County Superior Court" and was assigned "case No. F16903119." (*Id.* at p. 496.) When the prosecutor subsequently "attempted to file with the clerk's office an information bearing both case numbers" the "pleading apparently was rejected, as the file stamp bearing the date of November 29 was crossed out by hand and initialed." (*Ibid.*) "On appeal, the People represent that after the clerk's office rejected the information, the information was presented to the court clerk/judicial assistant in the arraignment department, who wrote 'CONSOLIDATED' and accepted and filed the information." (*Id.* at p. 497, fn. 3.) The practical result was to take what had been two criminal cases and make them one without a court order. But the Legislature created a clear mechanism for consolidating previously separate criminal cases: Section 954's consolidation clause, which requires a motion.[3] The text of section 954 does not mention any other method for consolidating criminal cases, and there is no reason to think the Legislature intended the joinder clause to play that role.

Indeed, some skepticism is warranted on this score, because the de facto consolidation mechanism is a curious one.

---

[3] To be sure, the statutory language speaks of consolidating "pleadings," not "cases." (§ 954.) But cases follow pleadings; the effect of consolidating accusatory pleadings is to consolidate the cases to which they pertain. (Cf. maj. opn., *ante,* at p. 23, fn. 13.)

On the majority's view, the joinder-clause-based consolidation mechanism springs into existence only in cases like this one, where one or more magistrates happen to issue two or more commitment orders within a roughly two-week window. (See maj. opn., *ante*, at p. 4.) As the district attorney acknowledged at oral argument, it is unusual for two preliminary hearings to take place within 15 days of one another; filing a single information on the basis of multiple commitment orders can occur only if the prosecutor is able to "bring the stars into line." And the new mechanism inferred by the majority has a remarkably short lifespan. After appearing unexpectedly to surprise the defendant and the court, it then vanishes again after just 15 days — the Cheshire Cat of procedural rules. I grant it is not impossible to read section 954 this way, but the reading does not seem especially likely. Why would the Legislature have intended to make the question whether court permission is necessary to consolidate two cases turn on the happenstance of whether two commitment orders issue within 15 days of each other? Neither the district attorney nor the majority explains.

Historical practice generally confirms that the joinder clause has not been understood in the way the district attorney urges. (See *People v. Navarro, supra*, 40 Cal.4th at p. 680.) Indeed, no party has pointed us to any published case, apart from the decision below, approving the filing practice in which the prosecutor engaged below — not since 1951, when section 954 was last modified; not since 1927, when the statutory forerunner to section 739 assumed essentially its present form; and not since 1915, when section 954 was modified to allow informations to charge multiple offenses. The majority opinion

does point to a few unpublished cases briefly mentioning — without much discussion — the filing of an information like the one in this case. But a small handful of unpublished decisions, issued over the course of more than a century, does not suffice to show that the practice has gained any significant acceptance in the superior courts. (Cf. maj. opn., *ante*, at p. 28, fn. 15.) And again, the history of this very case suggests the opposite: The district attorney's joint information caused significant administrative confusion here precisely because the filing was not consistent with generally accepted procedures.

**B.**

In approving the joint information in this case, the majority expresses concern that district attorneys have sufficient latitude to join related charges at the inception of a felony proceeding. The majority marks that inception point as the filing of the information because it is the first step of the prosecution that by law must be handled by district attorneys, and only district attorneys, and the first step that takes place in superior court, by law acting as the superior court.

As a technical matter, the majority's view of when a felony proceeding begins is plausible, if not unassailable. (Cf. *In re Harris*, *supra*, 49 Cal.3d at p. 137 ["the general rule" is that "it is the complaint that initiates felony proceedings"]; *Lempert v. Superior Court*, *supra*, 112 Cal.App.4th at p. 1168 ["the prosecution commences with the filing of the felony complaint"]; *People v. Dominguez* (2008) 166 Cal.App.4th 858, 865 ["Prior to the unification of the trial courts, felony proceedings commenced in the municipal court with the filing of a complaint"]; *People v. Maldonado*, *supra*, 172 Cal.App.4th at p. 94 [same]; *Le Louis v. Superior Court* (1989) 209 Cal.App.3d 669, 679, 683 ["a

preliminary examination can only be properly conceived as a component proceeding of the criminal action which commences with the filing of a complaint and can continue through superior court proceedings, including trial, resulting in judgment," meaning that "[p]etitioner's preliminary examination," for which "two separate complaints were consolidated," occurred "at an earlier stage of the same prosecution which remains pending against him in superior court"]; Pen. Code, § 859 [referring to person "charged with the commission of a felony by a written complaint" as the "defendant"].)[4]

---

[4]    The same can be said for the majority's view that "the felony complaint that initiated the magistrate proceeding was not filed in the municipal court or in *any* court." (Maj. opn., *ante*, at p. 30; cf., e.g., Pen. Code, § 859 ["When the defendant is charged with the commission of a felony by a written complaint subscribed under oath and *on file in a court* within the county in which the felony is triable, he or she shall, without unnecessary delay, be taken before a magistrate *of the court in which the complaint is on file*," italics added]; *In re Geer* (1980) 108 Cal.App.3d 1002, 1008 [pointing out the "interchangeable use of 'court' and 'magistrate' in various other portions of the Penal Code relating to preliminary proceedings," including Pen. Code, §§ 859, 859a, 868, 1002, 1383 & 1388].) Among other things, the majority's view that felony complaints are not filed in a court might imply that magistrates do not have the authority to consolidate felony complaints under section 954. But reported case law contains numerous examples of felony complaint consolidation. (See, e.g., *People v. Soper* (2009) 45 Cal.4th 759, 769; *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1051; *People v. Indiana Lumbermens Mutual Ins. Co.* (2012) 202 Cal.App.4th 1541, 1544, 1546; *Berardi v. Superior Court* (2008) 160 Cal.App.4th 210, 223.) I do not understand the majority opinion to call any of this into question (see maj. opn., *ante*, at p. 22, fn. 12); the conceptual distinction it now draws between "courts"

But it is unclear why this technical characterization should make a substantive difference in how we view the procedures for combining offenses subject to different "magistrate cases," as the majority calls them, in a single information.[5]  The majority's primary response is historical:  it points out that before 1972, felony complaints (unlike felony informations) could be filed directly by private citizens and did not have to be signed by the district attorney.  The majority reasons that "[i]f multiple crime victims filed multiple felony complaints alleging related offenses, the district attorney's only opportunity to exercise his or her express right to join those offenses was when filing the information."  (Maj. opn., *ante*, at p. 22.)

To the extent the majority is raising a historical concern about the purpose the joinder clause would have served in a pre-1972 case initiated by the filing of citizen complaints, the concern is unfounded.  Under the old, pre-1915 rule, each felony information could only have charged one offense, no matter how many offenses the complaint alleged or the evidence at the preliminary hearing showed.  The 1915 enactment of the joinder clause served the basic purpose of enabling the district attorney to file more than one charge in the information, based on the

and "magistrates" appears largely limited to the particular charging issue we confront today.

[5]      The majority refers to proceedings before the filing of the information as "magistrate cases" (as opposed, it seems, to the "real" felony cases that begin afterward).  This term is a new invention (maj. opn., *ante*, at p. 3, fn. 2); it appears nowhere in our statutes or case law.

offenses listed in each citizen's complaint or shown by the evidence at the preliminary hearing.  The district attorney could then move the court for consolidation of the pleadings before trial.

To the extent the majority's concern is instead simply that the prosecutor must have sufficient opportunity to combine related offenses for purposes of trial, the concern is misplaced. To read the relevant statutes as preserving the regular procedure in all cases does not mean the prosecutor cannot combine related offenses; it simply requires that the prosecution seek the court's permission first.

Adhering to regular procedure for consolidating cases makes practical sense.  It keeps the burden to move for consolidation of charges where it normally falls — on the prosecution — rather than shifting the burden to the defendant to seek severance of charges where a joint trial threatens significant prejudice to the defendant's interests.  Adhering to regular procedure also helps to avoid some of the types of administrative difficulties that emerged in this case as a result of the district attorney's unusual filing, including the disqualification of defense counsel without prior notice to the defendant or the court and continued delay while the defendant remained in custody.  And adhering to regular procedure respects the superior courts' ordinary case management practices.  Ordinarily, case dockets are managed, tracked, and consolidated pursuant to the regular administrative processes of the superior courts.  But "under the majority's holding, [courts] will now be required to merge the relevant case dockets under a lead case self-designated by the People, something that

heretofore occurred only pursuant to court order." (*Henson*, *supra*, 28 Cal.App.5th at p. 533 (dis. opn. of Smith, J.).)

It is certainly true, as the majority says, that the superior courts can adopt new administrative rules for the rare circumstance in which prosecutors file informations like this one. (See maj. opn., *ante*, at pp. 35–36.) Such rules may well help ameliorate the disruption caused by disappearing case numbers, criminal cases effectively consolidated without a consolidation motion, and defense attorneys on previously separate cases suddenly finding themselves working on the same, now-unified case. On the whole, however, I am not persuaded that the law requires the superior courts to face these problems — not even in the rare situation when the stars align to allow for two preliminary examinations and commitment orders in a single 15-day period.

There is a simpler, more straightforward answer possible here. Felony informations may indeed charge multiple offenses, as provided by section 954. But they may charge only those offenses contained in a single commitment order or shown by the evidence at a single preliminary hearing, as provided by section 739. The district attorney is not without recourse: after the information is filed in a particular case, the court may, upon the request of the district attorney and after conducting the requisite inquiry, "order the consolidation of that case with another case, or other cases, in the same posture" — as courts regularly do. (*Henson*, *supra*, 28 Cal.App.5th at p. 527 (dis. opn. of Smith, J.).) The critical point is that consolidation is a matter for the court to decide after full consideration of a filed motion, not for the district attorney to decide unilaterally.

Taken as a whole, this long-standing set of procedures provides a simple, streamlined, and well-understood framework for felony charging. I see no reason to deviate from those procedures here. And so, with respect, I dissent from the majority's approval of the unusual filing in this case.[6]

**KRUGER, J.**

**We Concur:**
**LIU, J.**
**GROBAN, J.**

---

[6] The majority's analysis of Henson's Penal Code section 995 motion (maj. opn., *ante*, at pp. 37–38) depends on its view that the filing of the joint information was proper (see *id.* at p. 2). As a result, the majority does not address alternative grounds for affirming the Court of Appeal's judgment, including the possibility that Henson forfeited his objection to the information by failing to demur (see *Henson, supra*, 28 Cal.App.5th at pp. 503–504 & fns. 6, 8). I accordingly do not address those alternative grounds either. For reasons already explained, I respectfully disagree with the reasons the majority does give for affirming the judgment.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  People v. Henson

_____

**Procedural Posture** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 28 Cal.App.5th 490
**Review Granted (unpublished)**
**Rehearing Granted**

_____

**Opinion No.** S252702
**Date Filed:** August 1, 2022

_____

**Court:** Superior
**County:** Fresno
**Judge:** W. Kent Hamlin

_____

**Counsel:**

Lisa A. Smittcamp, District Attorney, Robert Whalen, Chief Deputy District Attorney, and Douglas O. Treisman, Deputy District Attorney, for Plaintiff and Appellant.

Barbara A. Smith, under appointment by the Supreme Court, for Defendant and Respondent.

C. Matthew Missakian and Stephen K. Dunkle for California Attorneys for Criminal Justice as Amicus Curiae on behalf of Defendant and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Douglas O. Treisman
Deputy District Attorney
2100 Tulare Street
Fresno, CA 93721
(559) 600-4387

Barbara A. Smith
Attorney At Law
8359 Elk Grove Florin Road, #103-305
Sacramento, CA 95829
(619) 559-6427